## Hess Estate

*Merrill L. Hassel* and *Robert Ruppin*, for exceptants.
*John L. Hamaker*, contra.

*Adolph C. Koehler* and *John E. Ruth*, for surviving spouse.

BOWMAN, P. J., November 9, 1954.—Clarence W. Hess, also known as C. W. Hess, died testate January 17, 1953. In an adjudication filed April 1, 1954, on the first and partial account of the executors, securities having an aggregate value of $46,320.67 and cash of $80,000 were impounded in the hands of the accountants for the payment of such Federal estate and income taxes as may be determined to be due and for any deficiency or deficiencies therein, subject to future accounting. In addition to the impounded assets of $126,320.67, the balance for distribution included the note indebtedness of four corporations in the aggregate amount of $134,914. The notes were received by the executors from the sale of stocks held by decedent in accordance with a "Surviving Stockholders' Agreement." The notes become due in varying amounts in January 1955, 1956 and 1957.

After providing for a pecuniary legacy of $10,000 to his wife, Tillie E. Hess, and a life interest in one third of his residuary estate under an antenuptial agreement, testator by his will and codicils thereto gave all the rest, residue and remainder to Harry W. Mason and the Fulton National Bank of Lancaster in trust, the same to be divided into as many shares as there are children living at the time of testator's decease and deceased children leaving issue, the income to be paid to the children until they arrive at the age

of 35 years, "at which time there shall be paid out of said child's share one-sixth of the principal, and the balance shall be held in further trust and the income regularly paid to such child, and, at the expiration of each five-year period thereafter, one-sixth of the principal shall be regularly paid to such child until his or her arrival at the age of sixty years, at which time the final payment of the balance of the principal shall be made."

The will provides that the shares of all beneficiaries, including children and grandchildren, both as to income and principal, "shall not be liable for the payment of any debts or obligations . . . of the said beneficiaries nor shall said shares . . . be subject to any executions, attachments . . . in any manner whatsoever."

Of testator's children, Emma H. Blough is 46 years of age, Walter H. Hess is 43 years of age, Grace H. Hamilton is 41 years of age, and Albert H. Hess is 36 years of age. In the adjudication of April 1, 1954, we awarded to the trustees proportionate interests for the use of the widow and the children in the unconverted assets and made proportionate distribution of the cash to the respective trusts. As to those children in excess of 35 years, partial payments of principal in cash were made on a proportionate basis of the cash available.

Exceptions were filed to accountants' compensation and attorney fees allowed as credits in the adjudication. By agreement of counsel, these have been disposed of, and such agreement is reflected in the surcharges hereinafter made.

Exceptions were also filed by Emma H. Blough, who contends that before any cash is awarded to the trustees for the use of the widow and for those who have not attained the age when principal is distributable under the provisions of the will, there should be

awarded to her the amount now distributable to her by reason of her having attained the age of 45 years. Thus, she contends, that inasmuch as she is now entitled to receive from principal $12,008.50 (increased by reason of the surcharges herein included), that amount should have been awarded to her in its entirety in cash. Similar exceptions were filed by Walter H. Hess.

The net effect of these exceptions, if sustained, would under the complexities here present create an inequality neither expressed nor contemplated by testator. We have carefully considered the provisions of testator's will and nowhere therein can we find that testator intended that such preference should be accorded in distribution to any trust.

The problem of distribution in this estate arises both from the necessity of making adequate provision for the payment of estate tax and testator's arranging during his life for the deferred payment of the sale of the corporate securities. Neither Emma Blough nor the other children who attained the age of 35 years or more are in any manner prejudiced by the distribution set forth in the adjudication. They will receive in cash the proportionate amounts of principal to which they are presently entitled when funds therefor are available, undiminished, as we directed in the adjudication, by accountants' compensation.

Exceptions were also filed by Albert H. Hess, who contends that the indebtedness which was charged to his distributive share is in excess of the amount actually due. On petition, the audit was opened and from the evidence adduced at a hearing had we find that he should be credited with a payment of $650 made to decedent on May 3, 1950. His contention that he should be allowed a further credit of $946.93 for a payment made to decedent on January 17, 1949, is

without merit, since the notes in question and hereinafter set forth bear dates subsequent to the payment of January 17, 1949.

At the opened audit Beatrice A. Hess, wife of Albert H. Hess, presented a petition setting forth that in proceedings in the Court of Quarter Sessions of Lancaster County (March sessions, 1954, no. NS-20) an order was entered directing Albert H. Hess to pay $30 per week for the support of herself and three minor children; that subsequently a writ in the nature of an attachment-execution was issued by that court upon his being in default in the amount of $60 and the same was served upon the garnishees therein named, namely, the present accountants as executors and trustees. The petition asks for an order "strictly enjoining and restraining" the accountants in their capacities as executors and trustees from making any payments at any time of one half of Albert H. Hess' interest in this estate so long as payments under the order of the court of quarter sessions may be in arrears, other than to . . . petitioner." We note that in the order of that court entered July 9, 1954, the "writ shall become a lien and continuing levy upon the interest of the said Albert H. Hess in the estate of C. W. Hess, deceased, and in the trust created by his will." As to the trust, the lien and levy under the order extend to 50 percent of his interest in the principal and income thereof.

As to the authority of this court to restrain by injunction the executors-trustees from making payments out of Albert H. Hess' interest to persons other than to his wife, we are referred to Moorhead's Estate, 74 Pitts. L. J. 585. In that case an injunction of that nature was issued, but only to enable petitioner therein to have issued a writ of execution from the court of common pleas against the property belonging to re-

spondent and in the hands of the trustees of decedent's will. The orphans' court controls fiduciaries in the distribution of money in their hands and when necessary may issue injunctions for the protection of property within its jurisdiction (see Orphans' Court Act of August 10, 1951, P. L. 1163, sec. 732). In view of the order entered by the court of quarter sessions, we see no necessity for doing so here.

We shall award to Beatrice A. Hess the arrearage of $60 in support due her as of the time the audit was closed.

Exceptions filed to accountants' compensation and attorney fees and by Albert H. Hess to the extent hereinbefore set forth are sustained. All other exceptions are dismissed.

The adjudication will be modified as follows:

[The court thereupon completely restated the account in a modified form.]

And now, November 9, 1954, as reformed, the adjudication is confirmed absolutely.